UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CODY I. THOMAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 11-CV-0389-CVE-PJC |
| | ) |
| CITY OF BARTLESVILLE, OKLAHOMA, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Now before the Court are the following motions: Plaintiff's Motion for Summary Judgment and Brief in Support (Dkt. # 34); Defendant's Motion for Summary Judgment and Brief in Support (Dkt. # 35); Plaintiff's Application for Order of Dismissal without Prejudice to Refiling (Dkt. # 40); and Plaintiff's Motion to Withdraw Motion for Summary Judgment (Dkt. # 41). Plaintiff requests leave to dismiss without prejudice his claims under under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII). Defendant argues that it is entitled to summary judgment on plaintiff's Title VII claims, and asserts that the Court should not allow plaintiff to voluntarily dismiss his claims at such a late stage of the case. Plaintiff also requests leave to withdraw his motion for summary judgment, and the Court finds that plaintiff's motion to withdraw his motion for summary judgment (Dkt. # 41) should be granted.

**I.**

Cody Thomas was hired as a police officer by the Bartlesville Police Department (BPD) on September 7, 2009, but he was considered a probationary employee for the first year of his employment. Thomas had no prior experience as a police officer and he attended Council for Law Enforcement Education and Training (CLEET) for approximately three months before actively

serving as a BPD officer. Dkt. # 35-1, at 6. After completing his initial training, Thomas began field training with BPD officers and he spent approximately one month each with an officer on the night, evening, and daytime shifts. Thomas trained with BPD officers Thomas LeBlanc, Josh Johnson, and Mike Shields, and he had no problems working with any of the officers. Id. at 14. While training with LeBlanc, Thomas and LeBlanc met with BPD Chief of Police Tom Holland to review an email from a citizen commending their performance. After Thomas left Holland's office, LeBlanc reported that Holland asked if Thomas was "a lot darker than I remember him being when we hired him." Id. at 29. Thomas' mother is Hispanic and his father is part Cherokee Indian.

Thomas completed field training and he was assigned to the evening shift, and his supervisor was Lieutenant Mike McCarty. Id. at 15. In September 2010, Thomas received his first performance evaluation and he received a score of 3.0. According to the BPD's rating system, a score of 3.0 means that the person being evaluated "meets expectations." Dkt. # 35-2. However, the evaluation report noted that Thomas had problems including all relevant information in his incident reports and that he had only been out of training since April 2010. Id. at 2. The BPD did not find that it had adequate time to properly evaluate Thomas' performance, and Thomas' probationary status was extended for an additional 90 days. Dkt. # 35-3. Another new officer, Jason Moran, also had his probationary status extended to allow for an "adequate evaluation period." Dkt. # 35-3. The memorandum of understanding extending Thomas' and Moran's probationary status states that "[t]his action is NOT for punitive reasons but merely in order to obtain a fair evaluation for both parties." Id.

On September 29, 2010, Thomas received a written counseling for filing an incident report missing "essential information that is pertinent to obtain a conviction." Dkt. # 35-4. Thomas

received a written reprimand on October 18, 2010, because he filed several more reports with mistakes or that lacked essential information about the incidents.[1] Dkt. # 35-5. On November 1 and 7, 2010, occurrence reports were placed in Thomas' file because he filed reports omitting essential facts and he refused to make corrections to reports as ordered by higher ranking police officers. Dkt. # 35-6. The occurrence report on November 7, 2010 states that Thomas' report writing skills were declining and it describes Thomas as insubordinate. Id. at 1-2. Thomas was reevaluated by the BPD on December 7, 2010, and he received a score of 2.85. The evaluation states that Thomas' problems with report writing had increased over the previous 90 days and that he refused to make changes requested by his supervisors. Dkt. # 35-7, at 2. Thomas generally refused to ask questions of more experienced officers and he showed "little self motivation" in terms of making traffic stops or serving warrants. Id. at 3. As a result of the second evaluation, Thomas's performance was found to be below expectations and his probationary period was extended by another 90 days. Id. at 4.

On December 16, 2010, the City of Bartlesville (the City) held a pre-disciplinary hearing concerning three occurrence reports. The first occurrence report concerned Thomas' refusal to change language in reports as directed by his supervisors. Dkt. # 35-8, at 1. This was considered insubordination but was not treated as an "egregious" offense, and Thomas was suspended for 8 hours without pay. Id. The second occurrence report concerned two separate offenses. First, Thomas was a member of the United States Coast Guard Reserve (Coast Guard) and he was required to attend periodic training. Id. at 2. Thomas misrepresented to the City that the Coast Guard required him to complete his training in batches, but he actually had standing orders from the Coast

---

[1] The written reprimand is dated October 18, 2010, but it refers to incidents that occurred on October 21, 2010. Dkt. # 35-5, at 3.

3

Guard to serve one weekend a month. Id. Second, the BPD received a complaint from an assistant district attorney about a report written by Thomas. Thomas received a 16 hour suspension without pay for the second occurrence report. Id. The third occurrence report concerned Thomas' violation of a direct order from his supervisors to change language in a report, and he received a 24 hour suspension without pay for this violation. Id. at 2-3. In total, Thomas was suspended without pay for 48 hours for all three occurrence reports.

Thomas received a verbal counseling on December 20, 2010, for mishandling a call in which a suspect threatened to kill his ex-girlfriend. Thomas failed to arrest the suspect and he did not offer the target of the threat a form to request a protective order. Dkt. # 35-9, at 2. The BPD issued an occurrence report concerning Thomas' investigation of a statutory rape call on February 21, 2011. Thomas filed a report lacking basic information about the incident and it was unclear if the suspect could be prosecuted without the missing information. Dkt. # 35-10, at 2. Thomas received a third performance evaluation on March 2, 2011, and his performance was again found to be below expectations. The evaluation states that Thomas continued to have problems including basic information in reports and that he had repeatedly been insubordinate to his supervisors. Dkt. # 35-11, at 6. Thomas' employment was terminated on April 6, 2011. Dkt. # 35-12.

On June 21, 2011, Thomas filed this case against the City and the Bartlesville Fraternal Order of Police Lodge No. 117 (FOP), alleging six claims for relief: (1) hostile work environment under Title VII; (2) national origin discrimination in violation of Title VII; (3) violation of the Freedom on Information Act, 5 U.S.C. § 552 (FOIA), for failing to turn over secret personnel file; (4) public disclosure of private information in violation of Oklahoma law; (5) employment discrimination in violation of the Uniformed Services Employment and Reemployment Rights Act,

4

38 U.S.C. § 4301 (USERRA); and (6) intentional infliction of emotional distress. Defendant filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) seeking dismissal of all of plaintiff's claims except for his Title VII claims. Dkt. # 8. The Court granted the motion to dismiss but granted plaintiff leave to file an amended complaint realleging certain claims. Dkt. # 11. Plaintiff filed an amended complaint alleging Title VII claims only. Dkt. # 12. The Court entered a scheduling order setting, inter alia, a discovery cutoff of April 2, 2012 and a jury trial on July 16, 2012. On March 23, 2012, plaintiff requested leave to file a second amended complaint alleging a new claim against the City for allegedly retaliating against plaintiff for filing a union grievance. Dkt. # 22. The Court denied plaintiff's motion to amend as untimely because plaintiff offered no explanation for his delay in filing the motion. Dkt. # 38. On May 7, 2012, both parties filed motions for summary judgment. However, plaintiff failed to attach any evidence to his motion and defendant states that it asked plaintiff to withdraw his motion to avoid a violation of Fed. R. Civ. P. 11. Dkt. # 44, at 7. Plaintiff has filed a motion (Dkt. # 41) requesting leave to withdraw his motion for summary judgment, and the Court has found that plaintiff's request should be granted. See supra at 1. On May 18, 2012, plaintiff filed a motion (Dkt. # 40) to voluntarily dismiss his remaining claims, but defendant objects to plaintiff's motion. Plaintiff states that the FOP and the City resolved a dispute involving Thomas' employment shortly before an arbitration hearing on March 13, 2012, and Thomas will receive unpaid wages as part of the agreement between the FOP and the City. Dkt. # 40, at 1. He states that this will make "a substantial impact on the issues of liability and damages" and he seeks to voluntarily dismiss his claims in the interests of justice. Id. at 2. Defendant objects to plaintiff's motion to voluntarily dismiss his claims. Dkt. # 44.

5

## II.

Plaintiff requests leave to voluntarily dismiss his remaining claims without prejudice to refiling, because the FOP and the City have entered an agreement to avoid arbitration on a union grievance filed by plaintiff and the agreement will impact plaintiff's Title VII claims. Dkt. # 40, at 2. Defendant objects to plaintiff's motion unless he agrees to dismiss his claims with prejudice, because defendant has expended substantial resources defending against plaintiff's claims and plaintiff may be requesting to dismiss his claims to avoid an adverse judgment on the merits. Dkt. # 44, at 2.

Under Rule 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the Court considers proper." Unless a defendant can show "legal" prejudice from granting a plaintiff's request for voluntary dismissal, such requests should ordinarily be granted. Ohlander v. Larson, 114 F.3d 1531, 1537 (10th Cir. 1997). The Tenth Circuit has identified four non-exclusive factors that should be considered when reviewing a request for voluntary dismissal: "the opposing party's effort and expense in preparing for trial; excessive delay and lack of diligence on the part of the movant; insufficient explanation of the need for dismissal; and the present stage of the litigation." County of Santa Fe, New Mexico v. Public Service Co. of New Mexico, 311 F.3d 1031, 1048 (10th Cir. 2002). The Court must insure that "substantial justice is accorded to both parties," and this requires the district court to consider the "equities not only facing the defendant, but also those facing the plaintiff." Brown v. Baeke, 413 F.3d 1121, 1124 (10th Cir. 2005).

Defendant argues that it has expended considerable time and resources defending against plaintiff's claims and that it is actively preparing for trial. Dkt. # 44, at 2-3. Defendant states that

6

it has filed a meritorious motion to dismiss, successfully opposed plaintiff's motion to compel discovery, and presented five witnesses for deposition as requested by plaintiff. Defendant attended a settlement conference and has fully briefed a motion for summary judgment. Id. Defendant also notes that plaintiff stated in his initial disclosures that he would seek $600,000 in attorney fees, and that this shows that plaintiff is aware that prosecution of this case would involve substantial cost to defendant. The Court finds that defendant has made substantial efforts to defend against plaintiff's claims and prepare for trial, and this factor does not support plaintiff's request for voluntary dismissal. Defendant's motion practice and pretrial preparation have been significant, and it is likely that defendant would incur additional attorney fees and expenses for repetitive motion practice and discovery if plaintiff were permitted to refile his Title VII claims.

The next factor is plaintiff's diligence in requesting leave to dismiss his claims. Plaintiff states the FOP and the City avoided arbitration on March 13, 2012, and their settlement agreement gave rise to his request for dismissal. However, plaintiff's motion to dismiss was filed on May 18, 2012, and plaintiff does not explain his two month delay in filing this motion. The docket sheet shows that plaintiff filed a motion to compel and a motion to amend his complaint on March 23, 2012, after the arbitration proceeding was resolved. Both of those motions were denied. See Dkt. ## 32, 38. On May 7, 2012, both parties filed motions for summary judgment but plaintiff has now withdrawn his motion for summary judgment. Plaintiff's motion to dismiss was filed after he had an opportunity to review defendant's motion for summary judgment. The Court also notes that the case has been on file for over a year. The parties have engaged in pretrial motion practice and have completed discovery, and plaintiff did not seek to dismiss his claims until he received unfavorable rulings on a motion to compel and a motion to amend. The Court finds that plaintiff has no

7

reasonable explanation for the delay in filing his motion to dismiss, and the timing of events suggests that plaintiff is seeking to dismiss his claims to avoid a ruling on defendant's motion for summary judgment.

Based on the Court's analysis of the first and second factors, the Court also finds that plaintiff has not offered a sufficient reason for seeking to dismiss his claims and the advanced stage of the litigation does not support plaintiff's request for voluntary dismissal. Plaintiff offers no explanation why settlement of the arbitration prevents him from proceeding with his Title VII claims, and his explanation for seeking to voluntarily dismiss his claims is insufficient. The Court must also consider the present stage of the litigation. Trial is less than one month away and defendant has a pending motion for summary judgment. Plaintiff has waited until the case is nearly complete to seek leave to voluntarily dismiss his claims and has caused defendant to incur significant attorneys fees and expenses. By waiting until this late stage of the case to request dismissal, plaintiff has also seen defendant's entire litigation strategy in defending against his Title VII claims, and he could receive an unfair advantage if he were permitted to dismiss and refile his Title VII claims.

The Court finds that defendant would suffer legal prejudice from dismissal of plaintiff's claims at this late stage of the case, and plaintiff's motion to voluntarily dismiss his Title VII claims should be denied. Plaintiff fails to explain why the settlement of arbitration proceedings between the FOP and the City requires dismissal of his Title VII claims against the City. It is reasonable to assume that any monetary settlement in the arbitration proceedings will impact the availability of damages in this case, but these same issues will be present even if plaintiff is permitted to dismiss and re-file his claims. If plaintiff were permitted to dismiss and re-file his claims, he would be

8

permitted to conduct new discovery and he would have the advantage of knowing defendant's litigation strategy in advance. The Court also finds that there is a strong appearance that plaintiff filed his motion to dismiss solely to avoid a ruling on defendant's motion for summary judgment. Defendant's motion for summary judgment was already on file when plaintiff filed his motion to dismiss and, combined with plaintiff's insufficient explanation for seeking dismissal, the Court infers that plaintiff is attempting to avoid a ruling on defendant's motion for summary judgment. The Court takes into account that a motion for voluntarily dismissal should ordinarily be granted. See Ohlander, 114 F.3d at 1537. However, plaintiff has not identified a legitimate reason for requesting dismissal of his claims and defendant will be prejudiced if plaintiff's motion is granted, and the Court will proceed to rule on defendant's fully-briefed motion for summary judgment.

### III.

Defendant seeks summary judgment on plaintiff's Title VII claims, and argues that plaintiff has no evidence that his national origin was a factor in his treatment during his employment or his termination. Plaintiff has responded to the motion for summary judgment and, primarily relying on his own affidavit for evidentiary support, argues that there are genuine disputes as to material facts precluding summary judgment in favor of defendant.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

To survive summary judgment on a hostile work environment claim, "a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Penry v. Federal Home Loan Bank of Topeka, 155 F.3d 1257, 1261 (10th Cir. 1998) (quoting Davis v. United States Postal Service, 142 F.3d 1334, 1341 (10th Cir. 1998)). A plaintiff must demonstrate the severity of the harassment under a subjective and objective standard. Witt v. Roadway Exp., 136 F.3d 1424, 1432 (10th Cir.

1998). Plaintiff must show that he was targeted for harassment because of his protected status. Sandoval v. City of Boulder, Colorado, 388 F.3d 1312 (10th Cir. 2005). When determining if conduct is sufficiently severe or pervasive to constitute a hostile work environment, a court should consider "(1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance." MacKenzie v. City and County of Denver, 414 F.3d 1266, 1280 (10th Cir. 2005).

Plaintiff alleges that he was repeatedly humiliated and ridiculed because of his national origin. Dkt. # 43, at 13. However, plaintiff provides evidence of only one statement by an employee of the City that might concern his national origin. The Chief of Police, Holland, allegedly told LeBlanc that plaintiff "looked a lot darker" than Holland remembered. Dkt. # 35-1, at 28. Plaintiff admitted in his deposition that Holland's statement is the only evidence to support his subjective belief that the City discriminated against him because of national origin. Dkt. # 35-1, at 37. Plaintiff attempts to rely on allegations in his amended complaint as evidence of discrimination. Dkt. # 43, at 18. At the summary judgment stage, a plaintiff may not rely on the pleadings and he must cite specific facts and evidence supporting his claims. Mountain Highlands, LLC v. Hendricks, 616 F.3d 1167, 1170 (10th Cir. 2010). Thus, the Court will not consider allegations from plaintiff's amended complaint that are not supported by evidence in the summary judgment record. In his response to defendant's motion for summary judgment, plaintiff states:

> The Plaintiff has established the manner in which promotions, demotions and terminations are handled by the Defendant to be contrary to their own standards as well as those of the State of Oklahoma and Federal statutes. The Plaintiff has provided the statements from such important representatives of the City as the Chief of Police and the City Manager, indicating their motives and their intent. The

> plaintiff has given proof of the impact of these practices upon himself and the obvious disparate treatment these practices have upon others of Hispanic origin.

Dkt. # 43, at 17-18. Other than Holland's alleged statement, plaintiff has produced no evidence to support these broad allegations of workplace discrimination.

Considering the totality of the circumstances, the Court does not find any evidence of severe or pervasive harassment of plaintiff based on his national origin. Plaintiff could be arguing that he was improperly disciplined and the discipline constituted severe or pervasive harassment. Even if the Court were to assume that workplace discipline could constitute harassment, plaintiff has not shown that the discipline was motivated by a desire to harass him due to his national origin. Plaintiff has identified one statement allegedly made by Holland months before plaintiff's first performance evaluation. This does not support an inference that all workplace discipline against plaintiff was motivated by discriminatory intent. An employer's finding of misconduct may not be disregarded merely because a plaintiff disagrees with the employer's assessment, and the plaintiff must produce evidence that the employer did not honestly believe that the misconduct occurred. See Exum v. United States Olympic Committee, 389 F.3d 1130, 1137-38 (10th Cir. 2004). The Court also notes that plaintiff testified in his deposition that he believed he was harassed by defendant because he filed a union grievance, not because of his national origin. Dkt. # 35-1, at 16. There is no evidence to support plaintiff's allegations that he was subjected to a hostile work environment because of his national origin, and defendant is entitled to summary judgment on this claim.

Plaintiff asserts a separate Title VII claim based on his termination and alleges that defendant discriminated against plaintiff because of his national origin when it terminated his employment. Dkt. # 12, at 4-5. Plaintiff does not have direct evidence of discrimination and the Court must apply the McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), burden-shifting analysis when

12

reviewing plaintiff's claims. Plaintiff must first establish a prima facie case of national origin discrimination. Carney v. City and County of Denver, 534 F.3d 1269, 1273 (10th Cir. 2008). This requires plaintiff to produce evidence raising a genuine issue of material fact that "(1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." See EEOC v. PVNF, Inc., 487 F.3d 790, 800 (10th Cir. 2007). If plaintiff establishes a prima facie case of discrimination, the burden shifts to defendant to come forward with a legitimate non-discriminatory reason for any adverse employment action. Adamson v. Multi Community Diversified Servs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008). If the defendant provides a legitimate, non-discriminatory reason for its actions, the burden shift to the plaintiff to show that the defendant's explanation is pretextual. Young v. Dillon Cos., Inc., 468 F.3d 1243, 1249 (10th Cir. 2006). Defendant does not challenge plaintiff's prima facie case of discrimination but, instead, argues that plaintiff cannot establish that defendant's legitimate, non-discriminatory reason for terminating his employment is pretextual. Dkt. # 35, at 22.

Defendant states that plaintiff's employment was terminated due to his poor performance and that this is a legitimate, non-discriminatory reason for his termination. Dkt. # 35, at 22-23. "The defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason for the termination; the defendant does not at this stage of the proceeding need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need prove that the reasoning was applied in a nondiscriminatory fashion." EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1316 (10th Cir. 1992). The Tenth Circuit has described the defendant's burden at this stage of the proceedings as "exceedingly light." Zamora v. Elite Logistics, Inc., 478 F.3d 1160,

1165 (10th Cir. 2007). Defendant has met its burden to come forward with a legitimate, non-discriminatory reason for terminating plaintiff's employment.

Plaintiff argues that defendant's legitimate, non-discriminatory reason for terminating his employment is pretext for unlawful discrimination. At this stage of the proceeding, the burden shifts to plaintiff to show that defendants' explanation for terminating plaintiff's employment is pretextual. Plotke v. White, 405 F.3d 1092,1099 (10th Cir. 2005); Salguero v. City of Clovis, 366 F.3d 1168, 1176 (10th Cir. 2004). "A plaintiff demonstrates pretext by showing . . . that the employer's proffered explanation is unworthy of credence." Stinnett v. Safeway, Inc., 337 F.3d 1213, 1218 (10th Cir. 2003) (quoting Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir. 1994)). A plaintiff typically attempts to satisfy his burden by "revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" Mackenzie v. City & County of Denver, 414 F.3d 1266, 1278 (10th Cir. 2005) (quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)). A plaintiff's "mere conjecture" that the employer's explanation is pretext is not a sufficient basis to deny a motion for summary judgment. Branson v. Price River Coal Co., 853 F.2d 786, 772 (10th Cir. 1988)

Plaintiff argues that there is evidence suggesting that defendant's explanation for terminating his employment is unworthy of belief, but he fails to provide any evidence in support of this argument.[2] Reviewing plaintiff's response, it appears that he is arguing that he should have been taken off of probationary status in September 2010, and that defendant's decision to extend his

---

[2] The Court notes that plaintiff's pretext argument trails off in mid-sentence and it appears that this section of plaintiff's response is unfinished. Dkt. # 43, at 20.

14

probationary period for 90 days casts doubt on defendant's legitimate, non-discriminatory explanation. Dkt. # 43, at 20. However, defendant extended the probationary period for plaintiff and another new officer, Moran. Dkt. # 35-3. Plaintiff repeatedly states that he was the only Hispanic employee of the BPD and it is reasonable to infer that Moran was not Hispanic. Thus, this is not evidence that plaintiff was treated differently because of his national origin, because another non-Hispanic employee was treated in the same manner as plaintiff. Plaintiff claims that he was improperly questioned about his military leave. Dkt. # 43, at 20. Plaintiff has not shown that it was improper for defendant to contact plaintiff's commanding officer, and he does not contest evidence that he misrepresented his training schedule to defendant. See Dkt. # 35-8, at 2. The only evidence potentially related to plaintiff's national origin is Holland's statement that plaintiff was "darker" than he remembered. However, plaintiff has not shown that Holland was his direct supervisor, and the discipline of which plaintiff complains was generally issued by McCarty. The Court also notes that Holland's statement was not made near the time of plaintiff's termination. The summary judgment record shows that plaintiff was repeatedly disciplined for poor report writing and insubordination, and defendant gave plaintiff numerous opportunities to correct these deficiencies. The reasons for plaintiff's disciplinary warning remained consistent throughout his employment. Defendant terminated plaintiff's employment after his performance failed to improve, and the Court finds that plaintiff has not met his burden to show that defendant's stated reason for terminating his employment is pretextual. Thus, summary judgment should be entered in defendant's favor on plaintiff's disparate treatment claim concerning his termination.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment and Brief in Support (Dkt. # 35) is **granted**, and Plaintiff's Application for Order of Dismissal without Prejudice to Refiling (Dkt. # 40) is **denied**.  A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Withdraw Motion for Summary Judgment (Dkt. # 41) is **granted**, and Plaintiff's Motion for Summary Judgment and Brief in Support (Dkt. # 34) is **withdrawn**.

**DATED** this 26th day of June, 2012.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE